UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SADOKAT MAKHSUDOVA,

                              Plaintiff,

                    -v.-

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT ("NYPD") INSPECTOR JUAN
DURAN, ADMINISTRATIVE LIEUTENANT
KENNY KONG, SERGEANT RUIZ ALFREDO,
SERGEANT LAEL PENDLETON, and
SERGEANT FERNANDO CORDERO,

                              Defendants.

---

20 Civ. 10728 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Sadokat Makhsudova, formerly employed by the New York City
Police Department (the "NYPD"), brings this action against the City of New York
(the "City") and several NYPD senior officers, including Inspector Juan Duran,
Administrative Lieutenant Kenny Kong, Sergeant Ruiz Alfredo, Sergeant Lael
Pendleton, and Sergeant Fernando Cordero[1] (the "Individual Defendants," and
together with the City, "Defendants"), alleging unlawful discrimination — in the
forms of disparate treatment and maintenance of a hostile work environment —
based on Plaintiff's religion, sex, and national origin, in violation of Title VII of
the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the
New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 to
301; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin.

---

[1]     On July 28, 2021, the parties filed a joint stipulation amending the caption of this case
        to properly identify Sergeant Fernando Cordero, who had previously been named as
        Sergeant Angelemilio Cordero.  (Dkt. #33).

Code §§ 8-101 to 8-134.[2]  Defendants now move for dismissal of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND[3]

### A.  Factual Background

Plaintiff identifies as a Muslim woman, originally from Uzbekistan, who resided in Richmond County, New York, during the relevant time period.  (AC ¶ 7).  She began working for the NYPD as a cadet in 2016.  (*Id.* at ¶ 20).  Throughout her time as an NYPD employee, she received favorable evaluations.  (*Id.* at ¶ 21).  As a cadet, Plaintiff was initially placed in the 122nd Precinct as the only cadet in that precinct; three months later, she was transferred to the Highway Traffic Safety Unit, again as the only cadet in that unit.  (*Id.* at ¶¶ 22-23).  Plaintiff's primary responsibility in the Highway Traffic Safety Unit was to enter tickets and accident reports into the NYPD database.  (*Id.* at ¶ 24).

About six months into Plaintiff's tenure at the Highway Traffic Safety Unit, at a time when Plaintiff was on vacation, a new cadet named James Hammer joined the unit.  (AC ¶ 25).  Unlike Plaintiff, Hammer was neither

---

[2]     The Amended Complaint refers in its preface to claims for retaliation, but no such claims are alleged in the pleading, nor are they discussed in Plaintiff's opposition to Defendants' motion to dismiss.  (*See* Dkt. #29, 45).

[3]     This Opinion draws its facts from the Amended Complaint (the "AC" (Dkt. #29)), the well-pleaded allegations of which are taken as true for purposes of this motion.  For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss the Amended Complaint as "Def. Br." (Dkt. #42); Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss as "Pl. Opp." (Dkt. #45); and Defendants' reply memorandum as "Def. Reply" (Dkt. #46).

Muslim nor from Uzbekistan.  (*Id.* at ¶¶ 7, 25).  Upon her return from vacation, Plaintiff learned that Hammer had taken over her job responsibilities and that Plaintiff had been placed on "assist duty," meaning her role was to answer phones unless another officer required assistance.  (*Id.* at ¶ 26).  Plaintiff believes that her usual responsibilities had been replaced with "menial tasks" as a result of her sex, religion, and national origin.  (*Id.*).

Shortly thereafter, in 2018, Plaintiff was accepted into the Police Academy and placed in Transit District 32, where she was immediately subjected to what she describes as a discriminatory and hostile work environment.  (AC ¶¶ 20, 27-28).  Plaintiff alleges that her commanding officer, Inspector Juan Duran, continuously denied Plaintiff days off for Muslim holidays, even though other officers who were not Muslim or from Uzbekistan were permitted to take time off for similar requests.  (*Id.* at ¶ 29).  Plaintiff further alleges that Lieutenant Kenny Kong would deny Plaintiff time off for religious observances, even though her non-Muslim peers were permitted to take time off for religious observances.  (*Id.* at ¶ 30).  Additionally, during Ramadan, Plaintiff requested later meal breaks than usual because her religion required her to fast during the day.  (*Id.* at ¶ 32).  Sergeant Fernando Cordero denied Plaintiff's requests, requiring her to take "personal time" in order to break her fast later in the day.  (*Id.*).

Plaintiff also alleges a steady stream of verbal and other abuse that was directed to her at the workplace.  Sergeant Lael Pendleton repeatedly mocked Plaintiff because "her people" supposedly lived in mountains and ate horse

meat; he would "neigh" like a horse in Plaintiff's direction; and he would call Plaintiff "the first Uzbek female" rather than referring to her by name. (AC ¶ 31). Plaintiff also alleges that Sergeant Ruiz Alfredo and Sergeant Cordero partnered Plaintiff with male officers who made her feel "extremely uncomfortable" by staring at her inappropriately and making inappropriate comments. (*Id.* at ¶ 33). And when Plaintiff asked for a new partner, Alfredo and Cordero denied her requests. (*Id.* at ¶ 34).

Plaintiff was eventually transferred to a different squad within the unit, but even then the new assignments were "unworkable" for her. (AC ¶ 35). Plaintiff requested that her assignments be changed, but nothing was done, even as other officers regularly changed their shifts upon request. (*Id.*). Plaintiff alleges that Cordero gave Plaintiff undesirable assignments because she had tried to switch from his squad to a new one. (*Id.*). After months of enduring this work environment, Plaintiff requested a transfer to Transit District 34 in Coney Island, but her request was denied without explanation. (*Id.* at ¶ 36).

On August 15, 2019, Plaintiff was arrested for petit larceny. (AC ¶ 37). According to Plaintiff, all charges were "immediately dismissed," but Defendants still placed her on probation at work. (*Id.*).[4] Defendants

---

[4]     Defendants counter that the charges were not "immediately dismissed," but rather were adjourned in contemplation of dismissal and dismissed in April 2020 after several months without further criminal conduct by Plaintiff and the completion of 12 days of community service. (Def. Reply 6 & Ex. A). The Court discusses its ability to consider this information *infra.*

suspended Plaintiff for 30 days before placing her on modified duty from September 17, 2019, to January 23, 2020. (*Id.* at ¶ 38). An investigative interview was scheduled for January 27, 2020, to formally decide whether Plaintiff's probation would be terminated so that she would be restored to active duty. (*Id.* at ¶ 39). However, on January 23, 2020, Plaintiff was abruptly terminated from the NYPD effective immediately, with no explanation. (*Id.*). Eventually, Plaintiff received a termination letter which referenced Rule 5.2.7 of the Personnel Rules and Regulations of the City of New York. (*Id.* at ¶ 40).[5] According to Plaintiff, Rule 5.2.7 authorizes the NYPD to terminate

---

[5]    Plaintiff refers in her Complaint as "NYPD regulation 5.2.7." (AC ¶ 40). The citation is in fact part of the Personnel Rules and Regulations of the City of New York. Plaintiff has also misdescribed the relevant provision, which states:

> 5.2.7. Termination.
>
> (a) At the end of the probationary term, the agency head may terminate the employment of any unsatisfactory probationer by notice to such probationer and to the commissioner of citywide administrative services.
>
> (b) Notwithstanding the provisions of paragraph 5.2.1, whenever any agency has with the approval of the commissioner of citywide administrative services established a prescribed formal course of study or training for all probationary employees in a given title or titles, the agency head may, at the close of such course of study or training, terminate the employment of any probationer who fails to complete successfully such course of study or training, as the case may be.
>
> (c) Notwithstanding the provisions of paragraphs 5.2.1 and 5.2.7(a) the agency head *may terminate the employment of any probationer whose conduct and performance is not satisfactory after the completion of a minimum period of probationary service and before the completion of the maximum period of probationary service by notice to the said probationer and to the commissioner of citywide administrative services.* The specified minimum period of probationary service, unless otherwise set forth in the terms and conditions of the certification for appointment or promotion as determined by the commissioner of citywide administrative services, shall be:

officers who have received poor evaluations.  (*Id.*).  Plaintiff contacted her union delegate, Corey Grable, to determine the reasons for her termination, as she had not received any formal evaluations that year, much less a poor evaluation. (*Id.* at ¶¶ 40-41, 43).  Plaintiff's requests went unanswered, and she was directed to sign a document acknowledging receipt of the termination letter. (*Id.* at ¶ 43).

Plaintiff contrasts her termination with the experience of a non-party officer she identifies as "Officer Guerrero," who, it is alleged, was placed on probation during the same time with Plaintiff.  (AC ¶ 38).  Although Plaintiff does not specify the circumstances of his probation, Plaintiff alleges that Officer Guerrero — who is neither Muslim nor from Uzbekistan — participated in his investigative interview and was not terminated.  (*Id.* at ¶ 44).

## B.   Procedural Background

On April 13, 2020, Plaintiff filed a charge with the Equal Employment Opportunity Commission (the "EEOC"), complaining of discrimination on the basis of sex, religion, and national origin.  (AC ¶ 4).  On September 21, 2020, the EEOC issued Plaintiff a "right to sue" letter.  (*Id.* at ¶ 5).  Plaintiff filed the initial Complaint in this action on December 18, 2020.  (Dkt. #1).  On March 15, 2021, Defendants filed a letter motion for an extension of time to

---

(1) two months for every appointment to a position in the competitive or labor class and

(2) four months for every promotion to a position in the competitive or labor class.

55 RCNY Appendix A ¶ 5.2.7 (emphasis added).

respond to the Complaint, which motion the Court granted the following day. (Dkt. #22, 23).  On May 18, 2021, Defendants filed a letter seeking a pre-motion conference regarding their anticipated motion to dismiss.  (Dkt. #24). As Plaintiff had previously expressed an interest in amending the Complaint, the Court endorsed Defendants' pre-motion letter to permit her to do so.  (Dkt. #25).

Plaintiff filed the Amended Complaint, which is the operative pleading in this matter, on June 18, 2021.  (Dkt. #26).  She refiled her amended pleading on June 29, 2021, to correct administrative deficiencies.  (Dkt. #29).  In it, Plaintiff claims that she was discriminated against, and ultimately terminated from the NYPD, as a result of her sex, religion, and national origin, in violation of federal, state, and local law.  (AC ¶¶ 42, 45).

On August 2, 2021, Defendants filed a second letter renewing their request for a pre-motion conference regarding their anticipated motion to dismiss.  (Dkt. #34).  Plaintiff filed a responsive letter on August 6, 2021.  (Dkt. #35).  On August 9, 2021, the Court dispensed with its usual requirement that the parties attend a pre-motion conference and set a briefing schedule for Defendants' motion.  (Dkt. #36).  The Court granted the parties an extension of the briefing deadlines on September 7, 2021.  (Dkt. #39).

Defendants filed their motion and accompanying memorandum of law on September 22, 2021 (Dkt. #40), and refiled the documents on October 1, 2021, to correct filing deficiencies (Dkt. #41, 42).  On October 20, 2021, Plaintiff requested an extension of time to respond to Defendants' opening brief (Dkt.

#43), which the Court granted on October 21, 2021 (Dkt. #44). Plaintiff filed her opposition brief on November 5, 2021. (Dkt. #45). Defendants filed their reply on November 19, 2021. (Dkt. #46). Accordingly, Defendants' motion is fully briefed and ripe for the Court's consideration.

## DISCUSSION

### A.   Applicable Law

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). While the plausibility requirement "is not akin to a 'probability requirement,' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Toward that end, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

On a motion to dismiss, a court may consider any statements or
documents incorporated by reference in the complaint, documents that are
"integral" to the complaint even if they are not incorporated by reference, and
matters of which judicial notice may be taken.  *See Chambers* v. *Time Warner,
Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  A document is integral to the
complaint "where the complaint relies heavily upon its terms and effect."  *Goel*
v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d
at 153); *accord United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d
Cir. 2021).  Defendants ask the Court to consider a news article discussing the
resolution of Plaintiff's arrest for shoplifting.  (Def. Reply 6 & Ex. A).  But while
"courts considering a motion to dismiss may 'take judicial notice of the fact
that press coverage ... contained certain information,'" they may not "rely on
the 'truth' of that information" in resolving the motion.  *N.J. Carpenters Health
Fund* v. *Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 127 n.11 (2d Cir. 2013)
(quoting *Staehr* v. *Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir.
2008)); *see also* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not
subject to reasonable dispute").  Accordingly, the Court may not consider the
contents of the article in resolving the instant motion.

**B.    Analysis**

**1.    Threshold Matters**

Before considering the merits of Plaintiff's claims, the Court must resolve
two additional threshold issues: (i) whether to exercise supplemental

jurisdiction over Plaintiff's claims under the NYSHRL and the NYCHRL; and (ii) whether the Individual Defendants may be sued under Title VII.[6]

With respect to the first issue, the Court observes that federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  In deciding whether to exercise supplemental jurisdiction, a district court must balance the traditional "values of judicial economy, convenience, fairness, and comity[.]"  *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988).  Because the Court ultimately finds that certain of Plaintiff's Title VII claims survive Defendants' motion to dismiss, the Court will exercise supplemental jurisdiction over Plaintiff's correlative NYSHRL and NYCHRL claims.

As to the second issue, however, the Court agrees with Defendants that Title VII "does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers."  *Littlejohn* v. *City of New York*, 795 F.3d 297, 313 (2d Cir. 2015) (quoting *Raspardo* v. *Carlone*, 770 F.3d 97, 113 (2d Cir. 2014)).  As such, all of Plaintiff's Title VII claims brought against the Individual Defendants are dismissed.

---

[6]     In their briefing, Defendants also raised the issue of whether the NYPD may be sued as a separate entity.  (Def. Br. 18; Def. Reply 2).  Indeed, in its opposition brief, Plaintiff identified the NYPD as a Defendant in this case.  (Pl. Opp. 1).  However, the Court notes that the NYPD is not named as a Defendant in the operative pleading.  (*See generally* AC).

Unlike Title VII, the NYSHRL provides for the imposition of liability on individual defendants under two of its provisions: §§ 296(1) and 296(6). Individual liability under § 296(1) lies where a defendant actually participates in the conduct giving rise to discrimination, and is limited to individuals with ownership interest or supervisors, who themselves have the authority to hire and fire employees.  *Barry* v. *Macy's, Inc.*, No. 20 Civ. 10692 (CM), 2022 WL 1104847, at *11 (S.D.N.Y. Apr. 13, 2022) (quoting *Hubbard* v. *No Parking Today, Inc.*, No. 08 Civ. 7228 (DAB), 2010 WL3835034, at *10).  Section 296(6) of the NYSHRL provides for "aiding and abetting" § 296(1)(a) violations, explaining that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so."  N.Y. Exec. Law § 296(6).  To be found liable under § 296(6), an individual need not have supervisory or hiring and firing power, but still must have "actually participated in the conduct giving rise to the claim of discrimination."  *Barry*, 2022 WL 1104847, at *11 (quoting *Hubbard*, 2010 WL3835034, at *10).

For its part, the NYCHRL establishes a different, more expansive framework for individual liability.  *See Malena* v. *Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) ("The NYCHRL provides a broader basis for direct individual liability than the NYSHRL.").  Simply put, "[a]n individual defendant may ... be held personally liable under the NYCHRL if he participates in the conduct giving rise to the discrimination claim."  *Schanfield* v. *Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (citation

11

omitted). "A claim for aider and abettor liability is also cognizable under the NYCHRL and is susceptible to the same standard as [aiding and abetting] under the NYSHRL, as [the] language of the two laws is virtually identical." *Id.* (internal quotation marks omitted).

###    2.    Plaintiff States Claims for Disparate Treatment Under Title VII, the NYSHRL, and the NYCHRL

Plaintiff first alleges that Defendants discriminated against her, in the form of disparate treatment, based on her sex, religion, and national origin in violation of Title VII, the NYSHRL, and the NYCHRL. In urging dismissal of these claims, Defendants argue that Plaintiff's termination is the only adverse employment action pleaded in her Amended Complaint, and that she "has pleaded no nexus, nor any factual allegations suggesting a nexus, between the sole adverse action ... and any of her protected characteristics." (Def. Br. 6). While the Court agrees with Defendants that Plaintiff has not adequately alleged an adverse employment action, it finds that Plaintiff has plausibly alleged a claim for religious discrimination under Title VII and the NYSHRL based on Defendants' unequal treatment of her requests to take time off for religious holidays. On analogous reasoning, the Court finds that Plaintiff has plausibly alleged a claim for religious discrimination under the NYCHRL, as well as a claim for national origin discrimination under its broader standard of liability.

### a.    Pleading a Disparate Treatment Claim Under Title VII and the NYSHRL

Discrimination claims under Title VII and the NYSHRL are analyzed under the burden-shifting framework of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).  *See Tolbert* v. *Smith*, 790 F.3d 427, 434 (2d Cir. 2015).  Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *See Holcomb* v. *Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).  To establish a *prima facie* case for Title VII claims and for NYSHRL claims that pre-date October 11, 2019,[7] the plaintiff must show that "[i] [s]he belonged to a protected class; [ii] [s]he was qualified for the position [s]he held; [iii] [s]he suffered an adverse employment action; and [iv] the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Brown* v. *City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb*, 521 F.3d at 138).  The burden of establishing a *prima*

---

[7]    The New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which was to render the standard for claims closer to the standard under the NYCHRL.  *See* A8421/S6577 (as amended by S6594/A8424).  These amendments were signed into law by Governor Andrew Cuomo on August 12, 2019, and apply to claims that accrue on or after the effective date of October 11, 2019.  *See Pease* v. *City of New York*, No. 19 Civ. 7693 (KPF), 2021 WL 2651400, at *6 n.3 (S.D.N.Y. June 28, 2021); *Wellner* v. *Montefiore Med. Ctr.*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019).

Here, the only allegation that post-dates the effective date of the amendments is Plaintiff's termination.  Because the Court finds that Plaintiff has not adequately tied her termination to any protected characteristic, Plaintiff's NYSHRL claims predicated on her termination fail under both the pre-and the post-amendment standards.  As such, there is no occasion at this stage of the proceedings to consider the legal consequence, if any, of the fact that Plaintiff's termination occurred after the effective date of the amendments.  Plaintiff's remaining claims are all based on conduct predating the amendments, and thus the Court will apply the pre-amendment standard.

*facie* case is "minimal." *Lenzi* v. *Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019).

At the motion to dismiss stage, however, a plaintiff "is not required to plead a *prima facie* case under *McDonnell Douglas*[.]" *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Instead, "[t]he facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 795 F.3d at 311. For employment discrimination claims under Title VII, "a plaintiff must plausibly allege that [i] the employer took adverse action against [her] and [ii] [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86; *see Zoulas* v. *N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 51 (S.D.N.Y. 2019).

### b. Plaintiff Has Not Pleaded an Adverse Employment Action Under Circumstances Giving Rise to an Inference of Discriminatory Intent

An adverse employment action is one that constitutes "a materially adverse change in the terms and conditions of employment." *Brand* v. *New Rochelle City Sch. Dist.*, No. 19 Civ. 7263 (CS), 2022 WL 671077, at *9 (S.D.N.Y. Mar. 7, 2022) (quoting *Mathirampuzha* v. *Potter*, 548 F.3d 70, 78 (2d Cir. 2008)). Such action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citing, *inter alia*, *Brown*, 673 F.3d at 150). "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material

14

responsibilities, or other indices unique to a particular situation." *Id.* (quoting *Feingold* v. *New York*, 366 F.3d 138, 152 (2d Cir. 2004)).  But a "bruised ego," a "demotion without change in pay, benefits, duties, or prestige," or "reassignment to [a] more inconvenient job" are all insufficient to constitute a tangible or materially adverse employment action.  *Id.* (citing *Burlington Indus., Inc.* v. *Ellerth*, 524 U.S. 742, 761 (1998)).  Such inconveniences do not constitute adverse employment actions unless they are accompanied by "some attendant negative result, such as a deprivation of a position or opportunity." *Id.* (quoting *Hill* v. *Rayboy-Brauestein*, 467 F. Supp. 2d 336, 354 (S.D.N.Y. 2006) (internal citation and quotations omitted)).

A plaintiff may demonstrate that a protected characteristic was a motivating factor in the employment decision by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87.  In short, the complaint must plead facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.  While an inference of discrimination can arise from the employer's more favorable treatment of employees not in the protected group, *Leibowitz* v. *Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009), a plaintiff attempting to show that the employer treated her less favorably than a similarly situated employee outside her protected group must show she was "similarly situated in all material respects" to the individuals with whom she seeks to compare herself, *Mandell* v. *Cnty. of Suffolk,* 316 F.3d 368, 379 (2d

Cir. 2003) (quoting *Graham* v. *Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (internal citation and quotations omitted)).  "Although the question of 'whether two employees are similarly situated presents a question of fact, rather than a legal question to be resolved on a motion to dismiss,' 'it is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees were treated differently while similarly situated.'"  *Colon* v. *City of New York*, No. 19 Civ. 10435 (PGG) (SLC), 2021 WL 4427169, at *11 (S.D.N.Y. Sept. 26, 2021) (quoting *Brown* v. *Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014); *Sosa* v. *N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019)).

Plaintiff alleges several discrete actions that she characterizes as "adverse employment actions" and that were ostensibly animated by Defendants' discriminatory animus, including: (i) her termination (AC ¶ 45; Pl. Opp. 6); (ii) the verbal abuse to which she was subjected each work day (AC ¶¶ 31, 33; Pl. Opp. 7); (iii) her transfer to "assist duty" as a cadet (AC ¶ 26; Pl. Opp. 6); (iv) the denial of her request to transfer out of a unit in which her assignments were "unworkable" (AC ¶¶ 35-36; Pl. Opp. 7); (v) the denial of her requests to take time off for religious holidays or to shift her lunch break to end her religious fast (AC ¶¶ 29-30, 32; Pl. Opp. 7); and (vi) her placement on probation after her arrest for petit larceny (AC ¶37, Pl. Opp. 3).  The Court will assess each of the proffered adverse employment actions in turn.

*First*, while termination is clearly an adverse employment action, and while placement on probation may be one as well, Plaintiff has not adequately

alleged that *either* action was motivated by Defendants' discriminatory animus. Both actions took place in the aftermath of Plaintiff's arrest for petit larceny, an arrest that had nothing to do with any of her protected characteristics. Plaintiff refers to a supposed comparator, Officer Guerrero, who was not Muslim or from Uzbekistan, who was placed on probation at the same time as Plaintiff but was not terminated.  (AC ¶¶ 38, 44).  However, Plaintiff pleads no facts demonstrating that she was "similarly situated in all material respects" to Officer Guerrero.  *See Daniel* v. *City of New York*, No. 20 Civ. 11028 (PAE), 2021 WL 5988305, at *8 (S.D.N.Y. Dec. 16, 2021) (dismissing discrimination claim where plaintiff "[did] not allege facts that enable any meaningful assessment of whether [the comparator] is similarly situated to [plaintiff] in all material respects, so as to potentially support the inference that the denial of overtime opportunities to [plaintiff] bespoke discriminatory animus").  Conspicuously absent from the Amended Complaint is any allegation as to the reason why Officer Guerrero was placed on probation.  If, for instance, Officer Guerrero had been placed on probation after being arrested for larceny, he might be a similarly situated comparator to support Plaintiff's claim of discriminatory termination.  But without any allegations to this effect, the Court is left merely to speculate why Officer Guerrero may have retained his job, while Plaintiff did not.  As such, neither Plaintiff's placement on probation nor her termination suffices to constitute an adverse employment action.

*Second*, while Plaintiff alleges that Pendleton made discriminatory verbal comments to her on numerous occasions — for example, telling Plaintiff that

"her people" lived in mountains and ate horse meat, and "neighing" like a horse in Plaintiff's direction (AC ¶ 31) — such verbal comments do not support an inference of discrimination where they lack a causal nexus to an adverse employment action. *See Karupaiyan* v. *CVS Health Corp.*, No. 19 Civ. 8814 (KPF), 2021 WL 4341132, at *13 (S.D.N.Y. Sept. 23, 2021) (finding that "verbal comments may raise an inference of discrimination, but not where they lack a causal nexus" (citing *Luka* v. *Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017))). The Second Circuit has established a four-factor test to determine whether purportedly offensive statements suggest discriminatory bias or are merely "stray remarks" that generally "do not constitute sufficient evidence to support a case of employment discrimination." *Danzer* v. *Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). The test considers: (i) who made the remark (*i.e.*, a decision-maker, a supervisor, or a low-level co-worker); (ii) when the remark was made in relation to the employment decision at issue; (iii) the content of the remark (*i.e.*, whether a reasonable juror could view the remark as discriminatory); and (iv) the context in which the remark was made (*i.e.*, whether it was related to the decision-making process). *Fried* v. *LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (summary order) (citing *Henry* v. *Wyeth Pharms.*, 616 F.3d 134, 149 (2d Cir. 2010)). Applying these factors here, the Court finds that Pendleton's remarks do not give rise to an inference that Plaintiff's termination was tinged with discrimination. While Pendleton was Plaintiff's supervisor, the Amended Complaint alleges no facts suggesting that Pendleton had any involvement in the decision to terminate her employment —

or, more broadly, any temporal or causal proximity between Pendleton's offensive remarks and Plaintiff's termination.

*Third*, Plaintiff has not plausibly alleged that her transfer to "assist duty" as a cadet constituted an adverse employment action. Plaintiff refers to "a new cadet, James Hammer, who was not Muslim or from Uzbekistan," who took over her responsibilities while she was on vacation. (AC ¶¶ 25-26). Prior to Hammer's start date, Plaintiff's primary responsibility as a Highway Traffic Safety Unit cadet was to "enter tickets and accident reports into the NYPD database." (*Id.* at ¶ 24). After Hammer joined the unit, Plaintiff's responsibilities shifted to assisting officers and answering phones. (*Id.* at ¶ 26). Plaintiff does not explain how this alteration of job responsibilities constituted a tangible or materially adverse employment action, nor does she establish that this change was motivated by a discriminatory intent. *See Erasmus* v. *Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *9 (S.D.N.Y. Nov. 30, 2015) (dismissing discrimination claim where complaint "nowhere suggest[ed] that defendants engaged in such actions *because of* [plaintiff's] membership in a protected class" (emphasis in original)); *Humphries* v. *City Univ. of N.Y.*, No. 13 Civ. 2641 (PAE), 2013 WL 6196561, at *6 (S.D.N.Y. Nov. 26, 2013) (same, where plaintiff failed "'to plead any facts that would create an inference that any adverse action taken by any defendant was based upon' the protected characteristic" (quoting *Patane* v. *Clark*, 508 F.3d 106, 112 (2d Cir. 2007))).

*Fourth*, Plaintiff has not plausibly alleged that the denial of her request to transfer out of a unit in which her assignments were "unworkable" constituted an adverse employment action under Title VII or the NYSHRL.  Allegations based on the flexibility of hours do not plausibly allege an adverse employment action.  *See, e.g., Ahmad* v. *N.Y.C. Health & Hosps. Corp.*, No. 20 Civ. 675 (PAE), 2021 WL 1225875, at *19 (S.D.N.Y. Mar. 31, 2021); *Johnson* v. *Eastchester Union Free Sch. Dist.*, 211 F. Supp. 2d 514, 518 (S.D.N.Y. 2002) (finding that schedule change to "very inconvenient" hours did not amount to adverse employment action).  Even if these allegations did suffice, Plaintiff's contention that her assignments were "unworkable" (*id.* at ¶ 35) lacks any supporting detail.  *See Daniel*, 2021 WL 5988305, at *7 (citing *Offor* v. *Mercy Med. Ctr.*, 167 F. Supp. 3d 414, 432 (E.D.N.Y. 2016) ("Such a bare allegation is far too vague and bereft of specifics to plausibly allege a claim of disparate treatment on the part of the Defendants[.]"), *aff'd in relevant part, vacated in part on other grounds, remanded*, 676 F. App'x 51 (2d Cir. 2017) (summary order)).  Additionally, Plaintiff refers in the aggregate to "other officers" who were permitted to change their shifts upon request (AC ¶ 35), but does not plead any facts demonstrating that she was "similarly situated in all material respects" to any of these unnamed individuals.  *See Mandell*, 316 F.3d at 379.

*Fifth*, Plaintiff has not plausibly alleged that the denial of her requests to shift her lunch break to end her religious fast constituted discrimination under Title VII or the NYSHRL.  "Courts in this district and elsewhere have repeatedly held that an individual must have suffered some type of discipline or

demotion — or at least the threat of discipline or demotion — in order to establish a *prima facie* case of religious discrimination pursuant to Title VII." *Ahmad*, 2021 WL 1225875, at *19; *see also Kugel* v. *Queens Nassau Nursing Home Inc.*, No. 20 Civ. 5528 (ENV) (PK), 2021 WL 5701408, at *7 (E.D.N.Y. Oct. 20, 2021) (dismissing plaintiff's claims of religious discrimination under Title VII and NYSHRL where she failed to demonstrate that she suffered "a material loss of benefits").  While the Amended Complaint alleges that Plaintiff was required to use "personal time" to break her fast (AC ¶ 32), it does not allege that Plaintiff was threatened with discipline or disciplined for doing so. And here, as distinguished from her claims regarding requests for leave, Plaintiff does not allege that Defendants responded differently to similar requests from men, or from individuals who were not Muslim or not from Uzbekistan.

### c. Plaintiff Has Pleaded Claims for Religious Discrimination Under Title VII and the NYSHRL

The Court returns its focus on Plaintiff's allegations of disparate treatment in the granting of requests for time off for religious observances, and acknowledges that two sister courts in this District have found that "[a] plaintiff can state a different type of claim for religious discrimination under Title VII: 'a claim that defendant refuses to give Muslims time off to observe their religious holidays but does give time off to adherents of other religions.'" *Ahmad*, 2021 WL 1225875, at *19 (quoting *Siddiqi* v. *N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 371 (S.D.N.Y. 2008)).  Under this theory of liability,

a plaintiff does not need to show an adverse employment action.  Of potential note, however, the *Ahmad* court found that the plaintiff in that case had not adequately stated such a claim, while the *Siddiqi* court allowed this claim to go forward to trial principally because the defense had not addressed it in their summary judgment briefing.

Accepting this theory for purposes of the instant motion, the Court finds that Plaintiff has plausibly alleged unequal treatment by the NYPD with respect to her requests to take time off for religious holidays.  The Amended Complaint alleges, for example, that "Defendant Kong would specifically deny Plaintiff's off days for religious observance even though others who were non-Muslim were allowed to take off for religious observance."  (AC ¶ 30; *see also id.* at ¶ 29 ("Plaintiff's Commanding Officer, Defendant Duran, would continuously deny Plaintiff days off for Muslim holidays even though other officers, who were not Muslim or from Uzbekistan were allowed to take time off for these types of requests.")).

The pleading in this regard is sparse.  Plaintiff does not name specific individuals or identify particular dates and times when observant individuals of other religions were allowed time off for religious reasons.  Nor does Plaintiff specify the dates on which her requests were denied.  Therefore, while the Court concludes that this allegation suffices to make out a *prima facie* case of religious discrimination based on unequal treatment, *see Siddiqi*, 572 F. Supp. 3d at 371, it cautions Plaintiff that she will need to produce more specific evidence of Defendants' alleged disparate treatment going forward.

For the above-stated reasons, Plaintiff's claims of disparate treatment in violation of Title VII and the NYSHRL survive Defendants' motion to dismiss, but only to the extent such claims are linked to her requests for leave for religious observances.  Plaintiff's Title VII disparate treatment claim will proceed only against the City, while her NYSHRL disparate treatment claim will proceed against the City and Individual Defendants Duran and Kong.

> **d.    Plaintiff Has Pleaded Claims for Religious and National Origin Discrimination Under the NYCHRL**

The standard for unlawful employment practices is less demanding under the NYCHRL than under federal or (pre-amendment) state law.  *See Karupaiyan*, 2021 WL 4341132, at *8 (citing *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)); *see also* N.Y. Admin. Code § 8-107.  In particular, "NYCHRL claims are to be reviewed more liberally than Title VII claims, and the provisions of the NYCHRL must be construed broadly in favor of plaintiffs alleging discrimination."  *Zagerson* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 11055 (KPF), 2022 WL 292917, at *9 (S.D.N.Y. Jan. 31, 2022) (quoting *Levy* v. *Legal Aid Soc'y*, 408 F. Supp. 3d 209, 217 (E.D.N.Y. 2019)); *see also Williams* v. *N.Y.C. Transit Auth.*, 97 N.Y.S.3d 692, 695-96 (2d Dep't 2019).  Because the NYCHRL standard is more inclusive than the corresponding federal and state law standards, courts must analyze NYCHRL claims "separately and independently from any federal and state law claims."  *Mihalik*, 715 F.3d at 109.

"[T]he NYCHRL makes it 'an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the [protected characteristic] of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.'" *Mihalik*, 715 F.3d at 109-10 (internal alterations omitted) (quoting N.Y.C. Admin. Code § 8-107(1)(a)).  To plead a discrimination claim under the NYCHRL, a plaintiff must allege only that "she [was] treated 'less well' ... because of a discriminatory intent." *Id.* at 110 (citing *Williams* v. *N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)).  "[T]he challenged conduct need not even be 'tangible' (like hiring or firing)." *Id.* (quoting *Williams*, 872 N.Y.S.2d at 40); *see also Wolf* v. *Time Warner, Inc.*, 548 F. App'x 693, 696 (2d Cir. 2013) (summary order) ("To state a claim for discrimination [under the NYCHRL], a plaintiff must only show differential treatment of any degree based on a discriminatory motive.").

As explained in the preceding section, Plaintiff has adequately pleaded differential treatment based on a discriminatory motive with respect the denial of her requests to take time off for religious holidays.  What suffices to constitute a viable claim for discrimination under Title VII and the NYSHRL necessarily suffices to constitute a viable claim under the NYCHRL.  In addition, the Court finds that Pendleton's incessant insults to Plaintiff regarding her national origin — remarking that "her people" lived in mountains and ate horse meat; neighing like a horse in Plaintiff's direction; and

"constantly mak[ing] fun of Plaintiff by calling her 'the first Uzbek female' rather than her actual name" (AC ¶ 31) — transcend "petty slights or trivial inconveniences" and thus state a claim under the broader NYCHRL standard. *Mihalik*, 715 F.3d at 112 (internal citations omitted).  Accordingly, Plaintiff's NYCHRL claims survive Defendants' motion to dismiss to the extent they are based on these two categories of allegations, and survive only against Defendants the City, Duran, Kong, and Pendleton.

### 3.   Plaintiff States Claims for Hostile Work Environment Under Title VII, the NYSHRL, and the NYCHRL

Separately, Plaintiff alleges that Defendants created a hostile work environment based on her sex, religion, and national origin in violation of Title VII, the NYSHRL, and the NYCHRL.  Defendants argue that Plaintiff's hostile work environment claims must be dismissed because Plaintiff can neither show that she was subjected to conduct that was severe or pervasive enough to alter her working conditions, nor that such conduct was motivated by any of her protected characteristics.  (Def. Br. 14).  The Court disagrees in part.

### a.   Pleading a Hostile Work Environment Claim Under Title VII and the NYSHRL

To establish a hostile work environment under Title VII, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris* v. *Forklift Sys.,*

*Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted));
*see also Summa* v. *Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013) (noting,
with respect to pre-amendment NYSHRL claims, that "[h]ostile work
environment claims under both Title VII and the NYSHRL are governed by the
same standard").  "This standard has both objective and subjective
components: the conduct complained of must be severe or pervasive enough
that a reasonable person would find it hostile or abusive, and the victim must
subjectively perceive the work environment to be abusive."  *Littlejohn*, 795 F.3d
at 321 (quoting *Raspardo*, 770 F.3d at 114 (internal citations omitted)).  "The
incidents complained of must be more than episodic; they must be sufficiently
continuous and concerted in order to be deemed pervasive."  *Id.* (quoting
*Raspardo*, 770 F.3d at 114 (internal citations omitted)).  In determining
whether a plaintiff suffered a hostile work environment, the Court must
consider the totality of the circumstances, including "the frequency of the
discriminatory conduct; its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it unreasonably
interferes with an employee's work performance."  *Id.* (quoting *Harris*, 510 U.S.
at 23).

### b.   Plaintiff Has Pleaded Claims for Hostile Work Environment Under Title VII and the NYSHRL

Plaintiff's proffered evidence supporting her hostile work environment
claims is slightly different than that supporting her discrimination claims.  In
brief, Plaintiff alleges that a hostile work environment was created because

(i) Defendant Cordero denied Plaintiff's requests for a later lunch break during Ramadan (AC ¶ 32; Pl. Opp. 17); (ii) Defendants Alfredo and Cordero consistently forced Plaintiff to work with male officers who stared at her inappropriately and made inappropriate comments (AC ¶ 33; Pl. Opp. 17); (iii) Defendants Alfredo and Cordero assigned Plaintiff unworkable assignments (AC ¶ 35; Pl. Opp. 17); (iv) unspecified Defendants placed Plaintiff on probation for larceny charges that were already dismissed (AC ¶ 37; Pl. Opp. 17); and (v) Defendant Pendleton, Plaintiff's supervisor, repeatedly subjected her to derogatory comments and referred to her by demeaning nicknames (AC ¶ 31; Pl. Opp. 17).  Again, the Court will address the claims in turn.

Beginning with Defendant Cordero's alleged unwillingness to modify Plaintiff's lunch break (AC ¶ 32), the Court finds that Plaintiff's failure to detail the number and timing of these denials forecloses their use as evidence of a hostile work environment.  *Cf. Kugel*, 2021 WL 5701408, at *4 ("Given that defendants' alleged discriminatory behavior [specifically, their failures to accommodate plaintiff's requests for accommodations because of the COVID-19 pandemic] occurred in episodes over a very small fraction of Dr. Kugel's employment, the conduct does not rise to the level of pervasiveness required to state a hostile work environment claim under NYSHRL.").  Plaintiff's allegations that Defendants (i) consistently forced Plaintiff to work with male officers who stared at her inappropriately and made inappropriate comments (AC ¶ 33) and (ii) assigned Plaintiff "unworkable" assignments (*id.* at ¶ 35) are similarly too vague to be actionable.  *See Almontaser* v. *N.Y.C. Dep't of Educ.*, No. 13 Civ.

27

5621 (ILG), 2014 WL 3110019 (E.D.N.Y. July 8, 2014), at *8 (rejecting hostile work environment claim where allegations were "simply too vague," leaving court unable to "conclude that plaintiff's work environment was objectively hostile").  And Plaintiff's claim that Defendants placed her on probation for larceny charges that were already dismissed (AC ¶ 37), even if true, is neither severe nor pervasive enough to substantiate a hostile work environment claim.

Plaintiff has more traction with her final category of evidence, *i.e.*, her claim that on numerous occasions, Pendleton would tell Plaintiff that "her people" lived in mountains and ate horse meat; that he would "neigh" like a horse in Plaintiff's direction; and that he would "constantly make fun of Plaintiff by calling her 'the first Uzbek female' rather than her actual name." (AC ¶ 31).  While it is not obvious to the Court that the phrase "first Uzbek female" is a pejorative, the Court agrees that, taken together, Pendleton's comments are sufficiently severe and pervasive to allege an abusive working environment.  Although "nasty" comments "do not amount to 'adverse employment actions' because they are not materially adverse changes in the terms, conditions or privileges of [ ] employment," Plaintiff has sufficiently alleged a hostile work environment due to the continuous and overtly hostile nature of Pendleton's alleged discriminatory conduct.  *See Figueroa* v. *City of New York*, No. 20 Civ. 10050 (LAP), 2022 WL 799551, at *2 (S.D.N.Y. Mar. 16, 2022) (quoting *Fridia* v. *Henderson*, No. 99 Civ. 10749 (BSJ), 2000 WL 1772779, at *7 (S.D.N.Y. 2000)); *see also Gorzynski* v. *JetBlue Airways Corp.*, 596 F.3d 93, 102-03 (2d Cir. 2010) (vacating and remanding lower court's

grant of summary judgment on hostile work environment claim where defendant made "approximately six" comments "over a period of seven months"); *Snell* v. *Suffolk Cnty.*, 782 F.2d 1094, 1101 (2d Cir. 1986) (finding hostile work environment where plaintiffs "were subjected to a virtual barrage of racially offensive slurs and demeaning epithets that directly affected their work"). "The question of whether a work environment is *sufficiently* hostile to violate Title VII is one of fact," and the Court thus declines to decide it at the motion-to-dismiss stage. *Johnson* v. *J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 309 (S.D.N.Y. 2016) (quoting *Holtz* v. *Rockefeller & Co., Inc.*, 258 F.3d 62, 75 (2d Cir. 2001)).

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's hostile work environment claim under Title VII against the City, and her analogous claim under the NYSHRL against the City and Pendleton, but grants the motion as to the remaining Defendants.

### c. Plaintiff Has Pleaded a Claim for Hostile Work Environment Under the NYCHRL

Hostile work environment claims brought pursuant to the NYCHRL require a plaintiff to show only that she was subjected to "'unequal treatment' based upon membership in a protected class." *Zagerson*, 2022 WL 292917, at *16 (citing *Marseille* v. *Mount Sinai Health Sys. Inc.*, No. 18 Civ. 12136 (VEC), 2021 WL 3475620, at *9 (S.D.N.Y. Aug. 5, 2021)). "Because claims for hostile work environment and discrimination are governed by the same provision of the NYCHRL, they are analyzed under the same standard." *Id.* (quoting *Nguedi*

v. *Fed. Rsrv. Bank of N.Y.*, No. 16 Civ. 636 (GHW), 2019 WL 1083966, at *10
(S.D.N.Y. Mar. 7, 2019), *aff'd*, 813 F. App'x 616 (2d Cir. 2020) (summary
order)); *see also Rothbein* v. *City of New York*, No. 18 Civ. 5106 (VEC), 2019 WL
977878, at *9 n.12 (S.D.N.Y. Feb. 28, 2019) ("Under the NYCHRL, ... there is no
distinction between a claim premised on the creation of a hostile work
environment (a species of harassment claim) and one premised on unlawful
discrimination: the former is subsumed into the latter[.]").  For largely the same
reasons Plaintiff's hostile work environment claims under Title VII and the
NYSHRL survive Defendants' motion to dismiss, so too do Plaintiff's NYCHRL
claims for hostile work environment against the City and Pendleton.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's
Amended Complaint is GRANTED IN PART and DENIED IN PART.  The Court
denies Defendants' motion as to Plaintiff's Title VII claims against the City for
religious discrimination and hostile work environment.  Conversely, the Court
grants Defendants' motion as to Plaintiff's Title VII claims against Defendants
Duran, Kong, Alfredo, Pendleton, and Cordero.  Furthermore, the Court denies
Defendants' motion to dismiss Plaintiff's NYSHRL claims based on religious
discrimination against the City, Duran, and Kong, but grants it as to the
remaining Defendants.  Similarly, the Court denies Defendants' motion to
dismiss Plaintiff's NYCHRL claims based on religious discrimination against the
City, Duran, and Kong, as well as Plaintiff's NYCHRL claims based on national
origin discrimination against the City and Pendleton, but grants the motion as

to the remaining Defendants.  Lastly, the Court denies Defendants' motion to dismiss Plaintiff's NYSHRL and NYCHRL hostile work environment claims against the City and Pendleton, but grants it as to the remaining Defendants.

The Clerk of Court is directed to terminate Sergeant Ruiz Alfredo and Sergeant Fernando Cordero as Defendants in this matter.  The Clerk of Court is further directed to terminate the motion at docket entry 41.  Defendants are directed to file their answer to the Amended Complaint on or before **June 8, 2022**.  The parties are further directed to submit a joint letter and Proposed Case Management Plan and Scheduling Order on or before **June 15, 2022**.

SO ORDERED.

Dated:      May 18, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge